*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision
until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 14, 2020

Plaintiff-Appellee,

v

No. 346070
Wayne Circuit Court
LC No. 18-001177-01-FH

TYRONE SEAHORN,

Defendant-Appellant.

Before: K. F. KELLY, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with the intent to do great bodily harm less than murder or by strangulation, MCL 750.84, felon in possession of a firearm, MCL 750.224f, domestic violence, MCL 750.81(2), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced, as a third-offense habitual offender, MCL 769.11, to 1 to 10 years' imprisonment for assault with the intent to do great bodily harm less than murder or by strangulation, one to five years' imprisonment for felon in possession of a firearm, 79 days in jail for domestic violence, and two years' imprisonment for felony-firearm. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS

The victim and defendant lived together for twenty years, but their relationship began to deteriorate in 2016. On January 24, 2018, the victim came home, and defendant approached her carrying a revolver. Although he did not point the weapon at her, defendant demanded that she announce herself when she enters the home. She told defendant that she would not announce herself when she enters her home, and an argument ensued. Defendant grabbed the victim, pushed her to the ground, and choked her.

The next day, January 25, 2018, the victim returned home from the grocery store, and an argument ensued over the ground beef that she had purchased. Defendant pushed her against the kitchen wall and choked her. Defendant then pushed her to the ground, stomped on the back of her legs, kicked the side of her stomach, and choked her again. She was able to eventually grab her cell phone to call the police, but defendant took it away and said she would be "sorry" if she called the police. She went to the Highland Park Police Department the next day and reported the domestic abuse. After taking her report, Highland

-1-

Park police officers accompanied the victim to her home, arrested defendant, and seized three guns from his bedroom.

On the contrary, defendant testified that the couple were childhood sweethearts that eventually reconnected when he was in a rehabilitation program, and they began living together in 2004. He acknowledged that the relationship deteriorated, but they continued to live together. Defendant testified that he did not reside in a bedroom, but slept on the couch to stay away from the victim. Accordingly, the guns that were found in a bedroom did not belong to him. Defendant claimed that the victim began to have health and memory issues, and he witnessed her decline. She became angry with him and put her hands on him. To avoid any confrontation, defendant went to work, gambled at the casino, and spent time with others. He denied the assault and gun charges. Nonetheless, the jury convicted defendant as charged.

## II. HEARSAY

Defendant asserts that his right to a fair trial was violated when the prosecution presented hearsay testimony to bolster the victim's version of the events, or, in the alternative, defense counsel was ineffective for failing to object to the hearsay testimony.[1] Specifically, defendant contends that the victim's statement to Officer Haley was inadmissible as an excited utterance because it was not made in proximity to the time of the assault, but reported to the police the next day. We disagree.

"A trial court's decision to admit evidence will not be disturbed absent an abuse of discretion." *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v McBurrows*, 322 Mich App 404, 411; 913 NW2d 342 (2017) (quotation marks and citation omitted).

"Hearsay" is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c); See *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013). However, MRE 803(2) provides that "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is admissible even if the declarant is available to testify as a witness. The excited utterance exception allows testimony that would otherwise be inadmissible hearsay to be admitted because "it is perceived that a person who is still under the sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication so that any utterance will be spontaneous and trustworthy." *People v McLaughlin*, 258 Mich App 635, 659; 672 NW2d 860 (2003) (quotation marks and citation omitted). Whether a statement is admissible under the excited utterance exception is not strictly a question of time, but rather, a question of whether the declarant was still under the stress of excitement resulting from that event. *People v Smith*, 456 Mich 543, 551-552; 581 NW2d 654 (1998). The excited utterance exception considers whether the declarant is overwhelmed

---

[1] Defendant contends that this issue is unpreserved because trial counsel failed to object. At trial, when Highland Park Police Officer Aaron Haley began to testify regarding what the victim told him, defense counsel raised the following objection, "I'm going to object as to what this witness [the victim] allegedly stated." In response, the prosecutor responded that it was admissible as an excited utterance. The trial court noted that the prosecutor had not yet established the foundation for an excited utterance. After the prosecutor questioned Officer Haley regarding the victim's demeanor and presentation the statement was admitted, and a further objection was not raised.

by the stress of the event when she made the statement. *McLaughlin*, 258 Mich App at 659-660; See *Smith*, 456 Mich at 552 (upholding the admission of hearsay evidence admitted under the excited utterance exception when the declarant's statement was made 10 hours after an assault). The trial court may consider physical factors such as shock, unconsciousness, or pain to determine whether the declarant was still under the stress of the event. *Smith*, 456 Mich at 551-552. "The trial court's determination whether the declarant was still under the stress of the event is given wide discretion." *Id*. at 552. Moreover, even if the trial court erred in its determination that a statement was admissible pursuant to the excited utterance exception, the admission is subject to harmless error review. *Id*. at 554. Whether a statement is cumulative is a consideration, but does not automatically result in a finding of harmless error. *Id*. Rather, "[h]armless error review requires reversal only if the error is prejudicial." *Id*. at 554-555. The prejudice inquiry addresses the nature of the error and its effect in light of the weight and strength of the untainted evidence. *Id*. at 555.

Officer Haley testified regarding the statements that the victim made at 11:30 a.m., the day after she had been assaulted. The victim was limping and had bruises on her neck, chest, ankle, and fingers. Officer Haley testified that when she made the statements, she was fearful, shaking, and appeared to be startled. Moreover, the victim explained that she did not call the police immediately after the assault because defendant took her cell phone and threatened that she would be "sorry" if she called the police. Thus, while the record is unclear regarding how many hours passed between the assault and when she first reported it to Officer Haley, the record is clear that she was still under the stress of the event when the statements were made. Therefore, the trial court did not err in admitting Officer Haley's testimony regarding the victim's statements as an excited utterance.

Alternatively, even if the admission of the statement was erroneous, we conclude that its admission was harmless error. The statement as presented by Officer Haley was cumulative to the testimony offered by the victim, and defendant was not prejudiced by its admission. The victim testified to long-term abuse following the deterioration of the couple's relationship, and defendant testified that the victim's allegations were false because she had become angry and bitter as a result of health issues. Defendant's theory and testimony was not eroded by the admission of the victim's statement by Officer Haley. *Smith*, 456 Mich at 556.

In light of trial counsel's objection to the evidence at trial and our conclusion that it was appropriately admitted as an excited utterance or was harmless error, we cannot conclude that trial counsel was ineffective.[2] Indeed, counsel is not ineffective for failing to raise a meritless or futile objection. *People v Ericksen*, 288 Mich App 192, 205; 793 NW2d 120 (2010).

## III. OFFENSE VARIABLE (OV) 4

Defendant argues that he is entitled to resentencing because the trial court erroneously assigned 10 points for OV 4 when the lower court record is devoid of evidence that the victim suffered psychological harm that requires professional treatment. We disagree.

---

[2] In light of our conclusion that the evidence was properly admitted, we do not address the alternative argument regarding improper admission of prior consistent statements.

This Court reviews a trial court's factual findings regarding scoring variables for clear error and must be supported by the preponderance of the evidence. *People v Gloster*, 499 Mich 199, 204; 880 NW2d 776 (2016). Clear error exists if this Court is "left with a definite and firm conviction that a mistake has been made." *People v Stone*, 269 Mich App 240, 242; 712 NW2d 165 (2005). " 'Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo.' " *Gloster*, 499 Mich at 204, quoting *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

OV 4 addresses the psychological injury to a victim. MCL 777.34(1). Defendant was assigned 10 points for OV 4, which is required if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The fact that treatment has not been sought is not conclusive. MCL 777.34(2). OV 4 is appropriately scored 10 points, if the victim suffers "personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). Evidence of nightmares, the disruption of the victim's life, and plans to seek treatment are sufficient to support the assignment of 10 points to OV 4. *People v Drohan*, 264 Mich App 77, 90; 689 NW2d 750 (2004), overruled in part on other grounds by *People v Lockridge*, 498 Mich 358, 378 (2015). However, evidence of fear while the crime is being committed, by itself, is insufficient to assign points for OV 4. *People v White*, 501 Mich 160, 163-165; 905 NW2d 228 (2017). When calculating the guidelines, the sentencing court may consider all of the record before it, "including, but not limited to, the contents of the presentence investigation report, admissions made by a defendant during plea proceedings, or testimony taken at a preliminary examination or trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012) (quotation marks and citation omitted).

The victim and defendant lived together for approximately 20 years and had not been on good terms for the past two years. At the preliminary examination, the victim testified that defendant pushed and shoved her every day. She explained that she was "scared," hated to go home, and hated to go to sleep. She stated that defendant would enter her room daily, start an argument over "something that I might say that he doesn't like," and defendant would "flip[] to Dr. Jekyll-Mr. Hyde." She explained that she would avoid getting in arguments with defendant, but that she did not know what to do because "if I don't talk to him, it's argument. If I do talk to him, it's an argument." She would purposefully come home late so that "all I got to do is go to bed and get up in the morning and go to work; where I don't have to see [defendant] at all." She further testified that after defendant beat her on one occasion, she asked him why he would do such a thing and he told her to "shut up" or "he was gonna knock me out."

At trial, she testified that when she would arrive home, her stomach would be "bumbling" and "trolling" because she knew that there was going to be an argument. She repeatedly explained that she did not call the police immediately after the assaults on January 24, 2018, and January 25, 2018, because she was "too scared." She ultimately went to the police on January 26, 2018, because she "had had enough of him accusing me, picking on me constantly day in and day out. I get no sleep." She also testified that she lost her job because of defendant. Additionally, at the time she reported the assault to Officer Haley, she was shaking and afraid. This evidence was sufficient to establish that she would experience fear beyond the time that the crime was being committed and require professional psychological treatment as a result of defendant's continued abuse. Accordingly, the trial court properly assessed 10 points for OV 4, and defendant is not entitled to resentencing.

IV.  HABITUAL OFFENDER NOTICE

Defendant argues that he is entitled to resentencing because the prosecutor failed to file a notice of its intent to seek a third-offense habitual offender enhancement and failed to file written proof of service with the clerk of the court. Defendant argues that the habitual offender enhancement was not referenced on the record by any party before trial and was only listed on the amended information. We disagree.

The question of whether the habitual-offender notice requirements were met "is reviewed de novo as a question of law because it involves the interpretation and application of statutory provisions and court rules." *People v Head*, 323 Mich App 526, 542; 917 NW2d 752 (2018). The purpose of MCL 769.13 is to ensure that a defendant receives notice that he could be sentenced as a habitual offender at an early stage in the proceedings. *Id*. at 543. "The failure to file a proof of service of the notice of intent to enhance the defendant's sentence may be harmless if the defendant received the notice of the prosecutor's intent to seek an enhanced sentence and the defendant was not prejudiced in his ability to respond to the habitual offender notification." *Id*. at 544-545, citing *People v Walker*, 234 Mich App 299, 314-315; 593 NW2d 673 (1999) (holding that the prosecutor's failure to file a proof of service of the intent to seek an enhanced habitual-offender sentence with the clerk of the court was harmless and did not require resentencing because defendant had received actual notice of the enhancement). To determine whether the defendant received notice of the prosecutor's intent to seek an enhanced sentence, this Court may consider whether the defendant received actual notice of the enhancement at the preliminary examination, arraignment, or sentencing, and whether he had access to the charging documents throughout the proceeding. *Head*, 323 Mich App at 544-545.

The lower court record does not reflect if and when the prosecution filed a notice of enhancement and proof of service with the clerk of the court. However, contrary to defendant's assertion, a third-offense habitual offender notice was included in the original information. The notice listed each conviction upon which the prosecution intended to rely on to support the enhancement. On February 13, 2018, a preliminary examination was held and the trial court stated on the record that defendant was facing a third-offense habitual offender notice. On February 20, 2018, the prosecution filed an amended information and the third-offense habitual offender notice was included again in the amended information.

Therefore, defendant had notice of the charges against him, including the habitual offender enhancement, and was informed of the enhancement on multiple occasions. Defendant does not argue that he was without access to the court file that contained the habitual offender notice, failed to dispute the trial court's references to the enhancement, and did not express surprise during sentencing. Therefore, defendant is not entitled to resentencing.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra